UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

HENRY COLEMAN, JR.                                              PLAINTIFF

vs.                                                    Civil No. 1:23-cv-094-GHD-DAS

BAPTIST MEMORIAL HOSPITAL—GOLDEN
TRIANGLE, INC.; and JOHN DOES (1-10)                          DEFENDANTS

### MEMORANDUM OPINION

Presently before this Court is Defendant Baptist Memorial Hospital—Golden Triangle, Inc.'s ("Defendant") Motion for Summary Judgment [Doc. No. 46]. This is in response to Plaintiff Henry Coleman, Jr.'s ("Plaintiff") Complaint [1] filed against Defendant alleging racial discrimination in violation of the Civil Rights Act of 1964[1] ("Title VII"); age discrimination in violation of the Age Discrimination in Employment Act of 1967[2] ("ADEA"); retaliation in violation of Title VII; negligence; and intentional and negligent infliction of emotional distress. Upon due consideration, the Court finds Defendant's Motion [46] should be denied as to Plaintiff's race discrimination and retaliation claims but granted as to Plaintiff's age discrimination, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress claims.

### I.      Background

Defendant is a "full-service, . . . acute care hospital in Columbus, Mississippi," serving "residents of East Mississippi and West Alabama" [47]. Plaintiff Henry Coleman is a black male born on November 24, 1956 [1]. At the time of his termination—June 1, 2022 [53]—he was sixty-five years of age. Kayla Pruitt ("Pruitt"), a white female, was Defendant's Associate

---

[1] 42 U.S.C. § 2000e-2(a)
[2] 29 U.S.C. § 623(a)

Administrator and Plaintiff's direct supervisor [53]. Madison Guyton ("Guyton"), a white male, served as the hospital's Administrative Director and was the outgoing EVS Director Plaintiff was replacing [47]. Deborah Ashley, née Noland ("Noland"), is a white female who was an EVS Manager reporting directly to Plaintiff at the time of his termination [47].

It is alleged in the spring of 2021, several of Defendant's senior leadership members—including Pruitt—interviewed Plaintiff for an Environmental Services (EVS) Director position at their hospital [47]. The "highly regulated" EVS Department protects "against hospital-acquired infection and the spread of disease" through "housekeeping, laundry services, transportation, floor maintenance, and [the] proper disposal of hazardous waste" [47]. Defendant alleges Plaintiff "touted himself as an expert in the field of EVS[,] . . . claimed to have 30 years of experience in operations[,] more than 18 years of experiences in environmental services departments[,] . . . was 'intimately familiar' with regulatory requirements," and "also previously worked as an EVS Director at a hospital in Arkansas" [47]. Plaintiff also informs the Court of his "highly qualified" nature based on his "18 years of experience as an EVS Director or assisting the EVS Director at 4 hospitals in the Southeast, and over 20 years of experience with the U.S. Army in transportation and logistics" [1]. Based on this knowledge, Defendant hired Plaintiff on May 17, 2021, as an "at-will employee" [1; 47].

Plaintiff alleges he began his training with Guyton who "briefly met" with him for two to three days [53]. Plaintiff claims that training "centered on the Baptist 'Way' of work" and he was "only instructed about keeping a copy of shipping manifests of hazardous waste" [53]. Defendant disputes these facts stating "Guyton set trainings for Plaintiff and met with him several times in half-day increments" while "Carle Powe (former EVS Director) and Pruitt trained Plaintiff on

2

several aspects of his job" [47]. Additionally, Defendant claims it provided Plaintiff with a variety of documentation resources to support him in his role as EVS Director [47].

In the fall of 2021, Plaintiff met with Pruitt to develop an "action plan" (Defendant refers to it as a "Performance Improvement Plan") for one of his subordinates, Noland [53]. According to Plaintiff, this meeting was necessary after he "began communicating with Pruitt about Noland's underperformance in her role as manager" [53]. These one-on-one meetings allegedly went on weekly until March 2022 at which time Plaintiff reported Noland again and received no further responses from Pruitt on the matter [53]. Similarly, it is alleged Pruitt began receiving "reports of concerns regarding Plaintiff's behavior and leadership" in January 2022 which led to Defendant conducting a "confidential climate survey" [47]. It purportedly "reflected that Plaintiff's employees considered him difficult to communicate with and absent on the floor" [47]. To address these issues, Pruitt placed Plaintiff on an action plan in February 2022 [53]. Throughout this time Plaintiff claims to have been "consistently receiv[ing] numerous verbal complaints of racial discrimination against Noland and Pruitt from African-American leaders/subordinates" which came to a head on March 4, 2022, when "Pruitt hugged Noland during a department meeting in front of several African-American employees . . . who again complained to [Plaintiff]" [53]. Pruitt purportedly ignored all of these complaints [53]. Defendant claims it has no records of these complaints [47].

Both parties were notified of the Mississippi Department of Environmental Quality's (MDEQ) surprise inspection at Baptist's Oxford, Mississippi hospital on May 10, 2022 [47; 53]. Defendant alleges Guyton "discovered Plaintiff's lack of recordkeeping" after doing a "brief walkthrough" over an EVS maintained area of the hospital [47]. Two days later on May 12, 2022, Plaintiff, Pruitt, and Guyton together conducted an internal audit of the EVS department

3

[47; 53]. The issues discovered from that audit—of which many are alleged—and their significance are disputed, but both parties acknowledge issues did exist [47; 53]. Following the audit discoveries, Pruitt informed the human resources department of her intent to terminate Plaintiff [47] and suspended him on either May 24 or 25, 2022 [47; 53] to collect "statements from witnesses" and prepare "documents regarding her efforts to manage Plaintiff" [47]. Defendant terminated Plaintiff's employment on June 1, 2022 [47; 53], and Defendant replaced him with Dana Hill, "a younger, Caucasian female," in August 2022 [53].

## II.    *Standard of Review*

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).   The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323.  Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th

Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### III. *Discussion and Analysis*

Plaintiff brings federal and state claims against Defendant. The Court first addresses the federal racial discrimination, age discrimination, and retaliation claims. The analysis then turns to the Plaintiff's state law negligence and emotional distress claims.

#### A. Federal Claims

#### 1. *Title VII Racial Discrimination*

Plaintiff first alleges racial discrimination and retaliation under Title VII of the Civil Rights Act [1]. "Both discrimination and retaliation claims under Title VII are subject to the *McDonnell Douglas* burden-shifting framework." *Jones v. Gulf Coast Rest. Group, Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (citing *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020)); see also *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, Plaintiff must first "establish a *prima facie* case." *Id.* If accomplished, "the burden then shifts to [Defendant] to articulate a legitimate reason for the adverse employment action," and after providing such, "the burden then shifts back to [Plaintiff] to show that the reason is a pretext." *Id.*

5

To properly establish a *prima facie* racial discrimination or retaliation case, Plaintiff must show he "'(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [his] protected group.'" *Harrison v. Brookhaven School Dist.*, 82 F.4th 427, 429 (5th Cir. 2023) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)). Defendant has stipulated Plaintiff established a *prima facie* case of discrimination for the purposes of this Motion [47, p. 16, n. 7].

The burden now shifts to Defendant to "articulate a legitimate reason" for Plaintiff's termination. Defendant argues it "terminated Plaintiff's employment after Pruitt discovered Plaintiff failed to perform critical job functions" including failure to "maintain the Environment Services Department's hazardous waste records, weekly accumulation checklists, and Department of Transportation training records" [47]. Plaintiff's description of Defendant's "non-discriminatory" reasons for his termination is rather thorough and points directly to an "informal walk-through" where Defendant claims it discovered issues including:

(1) Central Accumulation Area (CAA) weekly issues checks/checklists;
(2) Failure to maintain DOT training certifications for EVS employees to sign hazardous waste manifests;
(3) Failure to maintain a current "Hazardous Waste Emergency Contingency Plan," "Hazardous Waste Reduction Plan," and "RCRA & Universal Waste Training Documents" on file in the EVS department;
(4) Failure to maintain records/reconcile hazardous waste manifests;
(5) Failure to maintain "Aution Sheath Solution" containers in the proper containment area;
(6) Failure to properly ground lab waste containers; and
(7) Failure to maintain the storage room

[53]. Plaintiff argues the last four compliance issues are "illegitimate" reasons for his termination because they were "unknown and uncovered . . . after reaching the termination decision" [53]. See *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 232 (5th Cir. 2015). However, he does not argue the same for the first three, and the Court finds these compliance issues—which

Defendant also provided—sufficient, non-discriminatory reasons for Plaintiff's termination [53; 47]. In spite of this contention, Defendant has not "failed to introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason or the adverse action." *Cole v. Quality Carriers, Inc.*, No. 23-30556, 2024 WL 937053, *3 (5th Cir. March 5, 2024) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)) (internal quotations marks omitted). As a result, Defendant has provided a legitimate reason necessary to overcome its burden. Plaintiff further contests these three remaining reasons; therefore, he must now provide sufficient evidence showing whether Defendant's reasons were pretextual. *Jones*, 8 F.4th at 368.

The burden of production now shifts to Plaintiff to provide evidence of "sufficient 'nature, extent, and quality' to permit a jury to *reasonably* infer discrimination." *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022) (citing *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 903 (5th Cir. 2000)) (emphasis added). This is accomplishable through "various forms of circumstantial evidence, including evidence of disparate treatment or evidence tending to show [Defendant's] 'explanation is unworthy of credence.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000)). However, this evidence must be "substantial" or "'of such quality or weight that reasonable and fair-minded [triers of fact] . . . might reach different conclusions.'" *Id.* (quoting *Laxting v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)). "The plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus *or* the falsity of the employer's legitimate nondiscriminatory explanation." *Rogers v. Medline Indus., Inc.*, 361 F.Supp.3d 616, 632 (S.D. Miss. 2019) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897) (5th Cir. 2002))

(emphasis original). At this stage of litigation and in light of Plaintiff's proffered evidence, Defendant has failed to show no genuine dispute of material fact exists.

"Courts consider the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case" when determining whether a plaintiff's pretext evidence is sufficient to proceed to trial. *Rogers v. Medline Indus., Inc.*, 361 F.Supp.3d 616, 629 (S.D. Miss 2019) (citing *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (internal quotation marks omitted). In the case *sub judice*, a genuine dispute of material fact exists concerning Plaintiff's duties as EVS Director. Defendant clearly states it "terminated Plaintiff's employment after it discovered [he] was failing to perform or complete several essential functions [of] his job" [47].

To ascertain whether that statement is true, one must know Plaintiff's job functions and duties. The parties *at least* agree Plaintiff, as EVS Director, was responsible for (1) the day-to-day operations of the EVS Department, including (2) managing its staff; (3) conducting certain aspects of payroll "like recording [staff's] time" and making sure "the recorded time is reported appropriately;" (4) "upholding productivity, quality, and training requirements for [EVS] employees;" (5) "implement[ing] hospital policies and procedures;" (6) "spot checking the recordkeeping through the department;" (7) "checking the condition and organization of EVS areas;" (8) implementing measures to ensure OSHA requirements were being met;" and (9) "ensuring that EVS employees are completing the tasks delegated to them." [46-4, p. 37-38].

Those tasks, however, are quite broad in their descriptions while the parties' dispute resides in the specific. That is, it resides in whether Plaintiff completed certain required reports, conducted proper cleaning and organizing requirements, conducted proper hazardous waste management, etc. [54]. Plaintiff argues "Baptist policies and procedures make clear that the

compliance requirements were not [Plaintiff's] responsibility" [53]. He further argues, at the time this dispute arose, it was his understanding Stericycle—Defendant's contracted third-party waste storage and removal service—was contractually obligated to complete the "compliance issues identified in the informal audit" [53]. Defendant disputes this, and contends Plaintiff knew the duties were his to complete [47]. Additionally, Plaintiff argues Defendant "failed to give [him] adequate training, resources, and clear instruction to have been made aware of and address the compliance requirements at the time of termination" [53].

Defendant disputes these arguments, pointing out the "EVS Director was delegated primary and direct responsibility for managing the hospital's hazardous waste" [54]. In the Court's opinion, the documentation's language with which Defendant supports that statement is broad and subject to interpretation [52-5; 54]. Defendant further argues "Stericycle's role in waste removal was not more than a 'resource,' and Plaintiff was expected to ensure all hazardous waste . . . was being properly managed" [54]. While language in the Stericycle contract [52-5, pp. 36-37] could support that assertion, Plaintiff maintains he "was not given the benefit of a contract/document with clearly defined roles over hazardous waste" [53]. What is more, no evidence exists in the record to contradict that fact and show he was indeed aware of the contract's terms.

Finally, a direct dispute exists between the parties about Plaintiff's initial training. In response to Plaintiff's arguments about the inadequacy of his training, Defendant presented testimony of Plaintiff acknowledging Guyton met with him "two or three days . . . in the first week of [his] employment" [46-4]. During those meetings, Plaintiff stated they discussed "still open-ended [items] in the EVS Department[,] . . . [resource] contact information," as well as "recordkeeping requirement [for] . . . personnel administrative records and hazardous material

records" [46-4]. Although this is seemingly direct evidence Plaintiff received training on job duties he allegedly failed to do, it is still broad enough in its language to split reasonable minds in their opinions on whether Plaintiff was adequately trained. That statement is only further supported by the multitude of testimonial references to Plaintiff's training. The parties do not dispute Plaintiff was trained, but a genuine dispute exists concerning the quality of that training. As a result of this analysis, "the Court is not persuaded that all of [Plaintiff's] arguments regarding pretext create questions of fact; however, *viewed in totality and in the light most favorable to him*, they are sufficient to create a fact question." *Rogers*, 361 F.Supp.3d at 632 (emphasis added).

### 2. *Title VII Retaliation*

Plaintiff next brings a retaliation claim under Title VII. This analysis, due to Plaintiff's lack of direct evidence, also requires a *McDonnell Douglas* framework analysis as applied in the discrimination analysis above. *Johnson v. Iberia Med. Center Found.*, No. 23-30159, 2023 WL 7703872, *3 (5th Cir. Nov. 15, 2023) (citing *Cardiel v. Apache Corp.*, 559 F. App'x 284, 288 (5th Cir. 2014)). "To establish a prima facie case of retaliation, [Plaintiff] must show that (1) [he] engaged in conduct protect by title VII; (2) [he] suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Moye v. Tregre*, No. 22-30341, 2024 WL 65424, *3 (5th Cir. Jan. 5, 2024) (citing *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023)) (internal quotation mark omitted). "To avoid summary judgment, the plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the action *but for* the protected activity." *Johnson*, 2023 WL 7703872 at *5 (emphasis added).

10

Plaintiff contends Defendant terminated him because he "reported multiple complaints to [Kayla] Pruitt and HR" [53]. Employees engage in protected activity if they have "opposed any practice made an unlawful practice" by Title VII. 42 U.S.C. § 2000e-3(a). "An employee's internal informal complaints of unlawful employment practices are sufficient to invoke the protections of Title VII. However, the complaint must have been based on a reasonable good faith belief that the conduct violated Title VII. *Loomis v. Starkville Miss. Public School District*, 150 F.Supp.3d 730, 751 (N.D. Miss. 2015) (citations omitted). Plaintiff allegedly submitted "multiple verbal complaints to [Kayla] Pruitt and HR, opposing race discrimination against Nolan and/or Pruitt by EVS department African-American employees" during his tenure as EVS Director [53].

Defendant directly disputes the existence of these complaints while pointing to a lack of record evidence [54]. However, despite Defendant alleging it "has no record of any complaints of race discrimination relating to the EVS Department during Plaintiff's employment," complaints of an "informal" nature—*i.e.*, verbal complaints—occur regularly and have been found to be a protected activity. *Loomis*, 150 F.Supp.3d at 751. Therefore, the Court finds, in the light most favorable to Plaintiff and in the totality of the circumstances, a genuine dispute of material fact exists in considering "whether the complaints . . . were based on a reasonable good faith belief" that Defendant was violating Title VII. *Id.* As such, the complaints qualify as protected activity for the purposes of this Motion [54].

In considering the second prong, "An adverse employment action is one that a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Valderaz v. Lubbock Cnty. Hosp. Dist.*, 611 F. App'x 816, 821 (5th Cir. 2015) (citing *Hernandez*

11

*v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012)) (internal quotation marks omitted). "The loss of employment is an adverse employment action, as [the Fifth Circuit] has always held that it is." *Id.* (citing *DeHart v. Baker Hughes Oilfield Ops., Inc.*, 214 F. App'x, 437, 442 (5th Cir. 2007)). With this precedent in mind, Plaintiff—having been terminated by Defendant—meets the adverse employment prong.

The third and final prong considers whether a causal link exists between the protected activity and the adverse action. The Fifth Circuit often considers three subfactors: "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Id.* at 823 (citing *DeHart*, 214 F. App'x at 442) (internal quotation marks omitted). Regarding the first factor, Pruitt placed Plaintiff on an Action Plan in February 2022 after conducting a confidential climate survey [47]. This appears to be the sole evidence of any disciplinary action taken against Plaintiff until his termination.

Turning to the second factor, based on the parties' submissions, the Court finds the evidence insufficient to determine whether Defendant followed "its typical policies and procedures in terminating" Plaintiff. *Id.* While there is evidence of a procedure—first placing Plaintiff on an "Action Plan," informing Human Resources of intent to terminate, and placing Plaintiff on suspension pending an investigation [47]—Defendant's *typical* policy or procedure has not been clearly demonstrated leaving nothing by which this Court can compare.

It is also unclear in considering the third factor how long the time gap is between Plaintiff's final protected complaint and his actual termination. Both parties acknowledge Plaintiff's complaints, albeit with a disagreement in number and quality, but neither provide a final date for this Court's consideration of proximity to the time of Plaintiff's termination. The

sum of these factors then culminates in genuine disputes of material facts requiring the denial of Defendant's request for summary judgment on Plaintiff's claim of retaliation.

### 3. ADEA Age Discrimination

Plaintiff's final federal claim is age discrimination under the ADEA.[3] As with the Title VII analysis, Plaintiff provides no direct evidence of discrimination based on his age; therefore, the *McDonnell Douglas* burden-shifting framework is necessary. *Hall v. UiPath, Inc.*, 123 F.4th 419, 422 (5th Cir. 2024) (citing *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 490, 496-97 (5th Cir. 2015)). Unlike a Title VII discrimination analysis, however, under the ADEA, the "ultimate burden of persuasion is on the plaintiff to prove that age was the *but-for* cause of the challenged employer decision." *Inmon v. Mueller Copper Tube Co., Inc.*, 757 F. App'x 376, 380 (5th Cir. 2019) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178-79 (2009) (internal quotation marks omitted) (emphasis added). "Proving that age was a 'motivating factor' for the decision is not enough." *Ford-Kee v. Miss. Valley State Univ.*, No. 4:23-cv-107-SA-JMV, 2024 WL 5150647, *11 (N.D. Miss. Dec. 17, 2024) (citing *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019)).

As previously stated, Defendant stipulated Plaintiff has established a *prima facie* case of discrimination for the purposes of this Motion [47, p. 16, n. 7]. Therefore, the Court will not belabor the point again. Turning to the second prong, Defendant relies on the same legitimate, non-discriminatory reasons for Plaintiff's termination [47]. The analysis's pretext step, however, requires a lengthier discussion. For his ADEA claim, Plaintiff relies on the same evidence he used for his Title VII pretextual analysis, but he does note his replacement, Dana Hill, was a "young female" [53]. "The pretext inquiry asks whether there is sufficient evidence demonstrating the falsity of the employer's explanation, taken together with the prima facie case,

---

[3] 29 U.S.C. § 623.

to allow the jury to find that discrimination was the but-for cause of the termination." *Ford-Kee*, 2024 WL 5150647 at \*12 (citing *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015)) (internal quotation marks omitted). A careful search of the record reveals no evidence of Ms. Hill's actual age, so it is impossible for the Court to determine whether she is "*substantially* younger," which could "indicate a strong *prima facie* case." *Inmon*, 757 F. App'x at 381 (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)) (emphasis added). While enough factual dispute exists to nudge Plaintiff's Title VII discrimination claim past summary judgment, the no genuine dispute of material fact exists regarding Plaintiff's age discrimination claim. Therefore, summary judgment is proper, and Plaintiff's ADEA claim should be dismissed.

## B. State Law Claims

The Court lastly discusses Plaintiff's state law claims, including a negligence action, a negligent infliction of emotional distress action, and an intentional infliction of emotional distress action.

### 1. Negligence and Negligent Infliction of Emotional Distress

"The Mississippi Workers' Compensation statute [MWCA] provides the exclusive remedy for workplace injury based on negligence." *Johnson v. Lowndes Cnty. VFW Post #4272*, 1:10-cv-313-SA-DAS, 2012 WL 1004895, \*2 (N.D. Miss. March 26, 2012) (citing Miss. Code Ann. § 71-3-9). This includes tort claims which are "clearly grounded in negligence" like negligent infliction of emotional distress (NIED). *Id.* at \*3 (citing *Campbell v. Jackson Business Forms Co.*, 841 F.Supp. 772, 774-75 (S.D. Miss. 1994)). "Mississippi courts have consistently dismissed claims for NIED brought by employees against their employers as barred by the exclusivity provision of the MWCA." *Walker v. Tronox LLC*, 1:12-cv-039-SA-DAS, 2012 WL

1431422, *4 (N.D. Miss. April 25, 2012) (citations omitted); see also, *Campbell v. Novartis Pharm. Co.*, 836 F. App'x 272, 275 (5th Cir. 2020). In light of this precedent, summary judgment is proper regarding Plaintiff's negligence and negligent infliction of emotional distress claims.

### 2. *Intentional Infliction of Emotional Distress*

Plaintiff also fails to find precedential respite for his intentional infliction of emotional distress claim. The Fifth Circuit provides a concise understanding of the tort.

> This tort requires conduct "so *outrageous* in character, and so *extreme* in degree, as to go beyond all possible bounds of decency, and to be regarded as *atrocious*, and *utterly intolerable* in a civilized community." Relief depends on "the nature of the act itself—as opposed to the seriousness of the consequences." "A claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes."

*Campbell v. Novartis Pharm. Co.*, 836 F. App'x at 274 (emphasis added) (citations omitted). The Fifth Circuit goes on to call this a "high standard," a description with which this Court agrees. *Id.* Nothing in the record reflects a genuine dispute of material fact on this claim. No evidence reveals any conduct which meets the above standard. Therefore, the Court must grant summary judgment on this claim and dismiss it.

### IV. *Conclusion*

For all the foregoing reasons, the Court finds Defendant's Motion for Summary Judgment should be denied in part regarding Plaintiff's Title VII discrimination and retaliation claims; and granted in part regarding Plaintiff's ADEA discrimination and state law claims.

An order in accordance with this opinion shall issue this day.

THIS the _21st_ day of January 2025.

SENIOR U.S. DISTRICT JUDGE

15